, Mr. Szymanski. Thank you, Your Honor. Good morning. May it please the Court, I'm Adam Szymanski for the appellant in this case, Inline Plastics. We're here today on appeal of constructions of three terms in the O03 patent cited in our brief, frangible section, frangible section upon severing and tamper evident bridge, that improperly narrowed the term by importing a limitation from the preferred embodiment to the exclusion of an alternative embodiment that was also explicitly disclosed in the claims. Yeah, but the problem is, it seems to me, that tamper evident bridge was a limitation that was added during the prosecution. And so the fact that the specification might have described a broader embodiment isn't necessarily relevant when the claims have been limited during the prosecution. What does the prosecution tell? And tamper evident bridge isn't defined in the spec or referred to in the spec, so we don't know what it means. The question is, what should we understand that new term to mean? Does it mean removable? Does it mean something else? How do we know what it means? And it doesn't seem to me that this is a question of clear and unmistakable disclaimer. It's a question about a claim term that's suddenly introduced in the prosecution, and we have to figure out what it means. So if we look, Your Honor, at page A230 of the record, this is where tamper evident bridge was added during prosecution to address the record that's referred to as the 406 patent that we referred to in our briefs as the Yerkeoly reference. And this discusses the function of the tamper evident bridge as opposed to what we see in Yerkeoly. In Yerkeoly, the lid of the container engages sort of a detent in the wall of the base. In our invention, in Inline's invention, there's a connection between the lid and the base of the container that, once severed, provides evidence of tampering. And if you would apply the plain and ordinary meaning of tamper evident bridge, we see in the district court's discussion of that term, and there's no dispute at this point, that a tamper evident bridge is a structure that connects the base to the lid and can provide evidence of tampering. There's no dispute over those two items in the meaning of the term. The only dispute is whether or not the tamper evident bridge must be removable. Now, if we see the context in which it was added to overcome the Yerkeoly reference, it was added to include this connection between the lid and the base. There's no discussion of it necessarily being removable. Or severable. Or severable. That limitation was never introduced during the prosecution. And if we look, it's this middle paragraph. Doesn't it have to be severable? I mean, that's the whole point of figuring out whether it's been tampered with or not. That's where you have to leave some evidence behind of tampering. What, in your view, constitutes leaving evidence of tampering? As we see in the disclosed embodiments in the specification, we see two alternatives. One is a removable strip that's in Lyons Preferred Embodiment. The alternative is this frangible section, which upon severing... Severing. Severing. Yes, indeed. But it specifically says it can be with a single score line. So to the extent the tamper-evident bridge needs to be severable, we see the disclosure in the specification that the severing can be accomplished with either two score lines or one score line, and that the resulting structure is the same either way. So we see... If you're going to, if you pull the tab off and remove it, the tab is gone. Or if you instead sever, you just disconnect it a bit, right? It's still evidence that it's been open. Certainly. Because severing by pulling along one dotted line is going to allow you to get at the lettuce by opening the lid, right? Correct. Once that score line, whether we're talking about one score line or two score lines, is severed, there's now evidence of tampering. And I don't mean to shift gears back to frangible section, which upon severing, but once the score line, a score line, or two score lines is severed, the resulting structure of these projections that the user then uses to open the container is the same either way. It doesn't matter whether you've severed one score line or severed two score lines with the effect of removing a tear strip. But where tamper-evident bridge, going back to your question, Judge Teich, was added during the prosecution, there's no discussion of removability. There's no discussion of having a removable tear strip as the district court imported into the meaning of the claim. What we see as it was added in the prosecution to overcome the rejection to claim one, we see that claim one is silent as to any recitation of a hinge or a frangible section. This connection that can provide evidence of tampering is what was added to claim one to overcome that rejection for the Erchioli reference. If we look back at the specification, and I would direct the Court's attention to page A-159 of the record in column six, we see a discussion of in-lines, commercial, and that we see this discussion starting at line 13 of column six that discusses a hinge. And it discusses how the frangible section, which is included within the hinge, and in fact forms the hinge, connects structures 36 and 38, and I would direct your attention to figure eight of the patent to see those projections, to form the hinge. If we look at line 23 in that same column, the paragraph beginning with the word preferably, we see a detailed discussion of the preferred embodiment where it says, preferably the hinge is formed by a frangible strip being delimited at least in part by a pair of score lines. But in that same paragraph, that same paragraph starting at line 32, we see two sentences, the first of which begins with the word alternatively, disclosing an alternative structure. And I quote beginning at line 32, alternatively, the integral hinge could be formed with a single score line or perforation line rather than a pair of score lines. In this instance, the single score line could be severed to create a pair of projections which would be used to open the container. Now, if we go back to claims one and two, these claims on their face, whether reciting the tamper evident bridge limitation or the frangible section which upon severing limitation, have no restriction on the face of the claim as to the number of score lines. Where we see, on the other hand, claim four, the picture claim of in-lines preferred embodiment discloses the pair of parallel score lines. If we also look at claim one, this is back to your question, Judge Dyke, about the tamper evident bridge, the limitation that dependent claim two adds is the limitation to tamper evident bridge wherein the tamper evident bridge includes a hinge joining the outwardly projecting, sorry, the outwardly extending flange of the cover portion with the base portion, the hinge including a frangible section which upon severing. And this is where we get to the idea of severing the tamper evident bridge is with the limitation added in claim two. What we see in the district court's opinion, though, is the imputation of a prosecution disclaimer. Now, I think as your honor alluded to, this court's cases require clear and unmistakable expressions of a manifest intent to exclude or restrict the scope of the claims in order for a prosecution disclaimer to attach. We don't see that anywhere in this record. Yeah, but I don't think that's the right test here. I think the question is what's the meaning of an added term? And I don't think that when you're adding a term that you have to find that the term is a clear and unmistakable disclaimer. You just have to figure out what the term means. For tamper evident bridge, correct. For frangible section and frangible section which upon severing, those limitations were in the claims from day one. They were in the claim set submitted with the provisional application that also included the alternative disclosure. And I would submit that for tamper evident bridge, we see the way the applicant distinguished over the Erchioli reference, focusing on the connection rather than removability or a number of score lines, that those two issues just never came up in prosecution, that it's clear on its face what the term tamper evident bridge means. What we see going back to frangible section though is a discussion of a commercial embodiment. This court's cases are clear that an applicant need not commercialize every conceivable embodiment of their invention in order to rely on commercial success, so long as the embodiment that they do rely on is within the scope of the claims. That's what happened here. This distinction between one versus two score lines, whether we're dealing with frangible section which upon severing or tamper evident bridge, just never came up. Now when we look at the district court's opinion, in addition to this issue of a prosecution disclaimer, we see that the district court engaged in a counting exercise where the district court counted the number of times the term frangible section appeared in the specification, disclosing a removable tear strip with a pair of score lines versus what the district court characterized as the quote isolated disclosure at A-17 of the opinion of the alternative embodiment of the single score line rather than the pair. This court dealt recently with a very similar issue in the E-Post Technologies case, and that was submitted to the court last month and the parties ruled 28-J letters. In that case, the DC district court held that an applicant had limited the scope of the claim because the totality of the specification exhibited a preference to one embodiment versus only an occasional reference in the words to the district court to the alternative embodiment. This court rejected that reasoning. That same reasoning applies here where again we see in the specification the explicit disclosure of the preferred structure with one score line, the alternative structure with the single score line rather than the pair. In the end, we see that the district court committed multiple errors, one of which is a clear error of fact with respect to the mention reference. This also goes, Judge Dyke, to the issue of Tamper Evident Bridge where the district court made the fact finding that the mention reference discussed in prosecution disclosed only a single score line. That's at page A-22 of the opinion. We submit, and I don't think there's any dispute, that that fact finding is clearly erroneous. The mention reference on its face and we see a copy of it at A-300 of the record with a translation at A-1274 disclosed structure 12, a perforated strip which E-PAC on the first page of its brief, the bottom line, concedes disclosed a removable tear strip necessarily with a pair of score lines. This reasoning, this fact error by the district court led to what we submit as the flawed reasoning with respect to Tamper Evident Bridge, finding that there would have been some difference if that term, Tamper Evident Bridge, was limited to two score lines versus the one. But the fact is the mention reference disclosed a pair of score lines. The Erchioli reference disclosed a single score line. There was no dispute that both of those were in the prior art. Neither the examiner nor the applicant ever brought up the issue of one versus two score lines to get over the prior art. So in view of the district courts having excluded a disclosed embodiment, having improperly counted the number of times the specification recited the preferred embodiment versus the alternative embodiment, and the unsupported inference of a prosecution claimer coupled with the district court's clearly erroneous fact finding with respect to the mention reference, in view of those errors, each of which standing alone, this court should reverse and remand with instructions to apply the plain and ordinary meaning of these terms as we detail in our brief, to cover both the preferred and alternative embodiments specifically disclosed in the specification. Unless the court has any questions at this point, I'd like to reserve the rest of my time. Okay. You've saved a few seconds for rebuttal. Let's hear from Mr. Scott. Thank you, Your Honor. Good morning, and may it please the court. We just heard counsel say four times that there's no discussion about the Tampa Revenant Bridge being removable or severable in the prosecution history. In response to your question, Judge, thank you. At page A214 of the record, in order to overcome the objection to Ercioli and mention, Inline Court submitted the following, quote, by providing a cover that is very difficult to open without removing the Tamper Evident Bridge connecting the cover to the base portion. That's the definition that they provide. That's what they argued overcomes mention and Ercioli. And with respect to frangible section, Judge Dyck is right. That was added in prosecution. It's not found in the specification. But frangible section, which upon severing is, and is found in the specification in space. Because Inline has defined over and over and over again as a frangible strip or a pull strip that is removed or severed or detached. And the clear import of using those words, sever, remove, and detach, interchangeably throughout the specification is that they defined exactly what the frangible strip is. But are you telling us that having the two score lines or the one is the difference between the ease of removing the strip? The strip can't be removed with one score line. Our proposed construction to the District Court was a frangible tear strip. The District Court responded, well, I think we can be a little bit more clear by saying it has at least two score lines. You're talking about the narrow strip between the score lines, is that right? I'm talking about the frangible section is defined as having two score lines. You said that the strip can't be removed and I wanted to be sure I understood what strip you're referring to. Yes, Your Honor. That's the strip I'm referring to. It's a frangible tear strip. I'm going to look at your site here to 214 and the by providing sentence. I don't see that as defining tamper evident bridge as necessarily being removable. It certainly contemplates that it could be removed, could be made removable, but I'm not sure that it says that it has to be removable. It says you can't open the cover from the base portion without removing the tamper evident bridge. The counsel presented the argument to this court that there was no discussion of the tamper evident bridge being removed. It was difficult to open. Difficult to open is not the word you read. When you read earlier it said it was difficult to open as opposed to impossible to open. Right, because let's remember what the invention is. It's a plastic container in which the flange of the cover portion is recessed within the higher flange of the base portion. Right, so we know it's capable of being open with a strip that is severed but not removed because that's what your device does, your client's device. Yeah, but my client's device, which doesn't inform the claim construction here, but my client's device has a non-breakpoint. It doesn't have a strip. And that's why there was a finding of non-infringement. But every embodiment, every disclosure in the specification refers to a pull strip or a tear strip being removed from the structure. Even the ones that Inline is arguing are excluded by the claim construction, speak specifically about the tear strip being removed. So, for example, if we go to the bottom of column 5 at A59, that embodiment, which we spent some time on discussing here, is introduced with this statement. Container 10 incorporates features which are intended to prevent and deter opening container 10 without first removing frangible strip 18 from hinge 16. And then it goes on to discuss what the interaction is between the flange of the cover and the base. Well, I mean, as the district judge pointed out, you certainly win the numbers competition. The number of times that the word removable is used is manifold. But you still have on column 6, line 32, the alternate structure. We don't. Because that's not an alternate. I know that's what you argue it's not. But what happens if the district court was wrong and that is an alternate structure? Well, let me explain why I think the district court is correct in that regard. Because that alternate structure is with respect to the hinge 18, not with respect to... The hinge includes the frangible section. Right. The hinge includes a frangible section. So even that alternate embodiment, starting at line 38, which says, in this embodiment, strip 18 includes a laterally opposed grasping tabs to provide a convenient location for gripping the strip. So the user grips the strip. And then it says, preferably, there's indication on that strip itself to facilitate the removal from hinge 16 of strip 18. So even in that embodiment, which Inline argues is excluded from the district court's construction, it talks about a hinge. It does not talk about a hinge having one scroll line. It doesn't talk about a frangible strip having one scroll line. There's nothing in this specification and there's nothing in the prosecution history to indicate that a frangible strip has only one scroll line. Nothing. And further, in the prosecution history, to get around mention, it amended Claim 2 to say that the hinge includes a frangible section. So the hinge with the frangible section is set forth in the specification and each of the figures that show it as a removable strip. Judge Cuthbert, it's true that the district court did count. But that's really what the court's instructed to do. It's instructed to look at the claims in light of the specification. So it read the specification for any indication that a frangible strip could have anything other than two scroll lines and found nothing. This is what you want the district court to do. The EPAS case that was cited, that's where you had different disclosures in the specification, a pen and a marking pen. And that's why the district court's instruction was viewed as overly narrow. But here, what is being disclosed to a competitor? What's being disclosed to someone of ordinary skill in the art? The frangible strip that evidences the tampering has to be removed from the container. That's the only thing that's being disclosed here. What's the dictionary definition of frangible? Breakable. But the dictionary definition of remove and sever and detach are essentially the same thing. In fact, inline sites... Not always. Right, but with respect to sever... Something that's removable is severable, but something that's severable is not necessarily removable. Not necessarily, but if you look at the dictionary definition in the judge's Markman ruling, that inline credits, it says severable, especially to remove. And in the context of this specification, in the context of this disclosure, the strip is removed. There's no other disclosure in here. The various embodiments go to whether the container is round or whether the container is square or the number of notches in a two-blade knife. Judge Clevender, the knife has two blades, so the spacing of those indentations and the perforations, that's an alternative embodiment. But there's no alternative embodiment with respect to the frangible strip. That was the inventive step that they highlighted. That's what they said distinguished it over mention and urchioli. That never changed throughout the prosecution history. Thank you. Unless the court has any questions, I'll have to... Any questions? Thank you, Mr. Scott. Mr. Szymanski. Thank you, Your Honor. A clear examination of the prosecution record establishes, I think beyond any doubt, that inline never said a removable tear strip distinguishes us over urchioli or mention. We couldn't have said that because mention disclosed a removable tear strip. Urchioli disclosed a single score line. We distinguished over those references on other elements of the claims as bolstered by clear evidence of commercial success. I'd like to direct the court also back to the line Mr. Scott read, arguing that I was incorrect in stating that we hadn't distinguished over the prior art. If you look at page A14 of the record, the line Mr. Scott read stated, by providing a cover that is very difficult to remove without removing the tamper evident bridge, connecting the cover to the base, pilferage is substantially reduced. Id at paragraph 5. If we turn back to page A213 of the record, the id refers to the commercial success declaration of August Lanzetta. So what we see again is a discussion, a secondary indicia of non-obviousness in yoring from inline's preferred embodiment that are commercialized. That is unremarkable in patent prosecution. And again, this court's cases are absolutely clear that an applicant need not commercialize every single conceivable embodiment. We also heard that the specification does not disclose an alternative embodiment of the fragile section, rather that it's limited only to the hinge. I would again direct your attention back to column 6 on A159 of the record. We see the paragraph beginning at line 13, hinge 16 includes an upper outwardly projecting arm connected to the base portion and a similar lower outwardly projecting arm 38 connected to the cover portion. The last line in that paragraph says the upper and lower arms 36 and 38 are joined together by a common attachment to frangible strip to form the hinge. The next paragraph following says preferably the frangible strip is delimited at least in part by a pair of score lines. Then goes on to disclose the alternative embodiment. Now under the district court's constructions, we have a disclosed alternative embodiment that is read out of all the claims. Tampere Evident Bridge was added only to some of the claims. Your adversary went on to refer to the next paragraph starting on line 37, 38. Yes, Your Honor. What's your response to his discussion of that paragraph? Well, that goes back to discuss the preferred embodiment. Preferred embodiment. I think that's clear and where we see... It's a little unclear. It says in this embodiment, I've understood your adversary to mean in this embodiment refers back to the alternative embodiment. Well, I don't think so. That wouldn't make any sense because with a single score line, you wouldn't have a grasping tab. It doesn't fit with the figures. But the fact remains, again, we see a disclosed embodiment in the specification that was read out of all of the claims. Also, the argument that all of the figures in the patent portray the preferred embodiment, they do. I don't think there's any dispute about the figures. It's the discussion of the structures shown in the figures that this alternative embodiment is clearly disclosed, but the district court's construction erroneously we submit read it out of the scope of the claims. I think we have the positions. Thank you, Mr. Szymanski and Mr. Scott. Thank you.